No. 16-1989

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**JOAQUÍN CARCAÑO**, *et al.*,

*Plaintiffs-Appellants*,

v.

**PATRICK McCRORY**, in his official capacity as
Governor of North Carolina,

*Defendants-Appellees*,

and

**PHIL BERGER,** in his official capacity as President *pro tempore* of the North
Carolina Senate, and **TIM MOORE**, in his official capacity as Speaker of the
North Carolina House of Representatives,

*Intervenors/Defendants-Appellees*.

On Appeal from the United States District Court
for the Middle District of North Carolina
No. 1:16-cv-00236-TDS-JEP

## PLAINTIFFS-APPELLANTS' OPPOSITION TO
## MOTION TO DISMISS APPEAL

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................2

I.    The Unprecedented Jurisdictional Limitation that Appellees
      Seek Conflicts with the Text of Section 1292(a)(1) and
      Numerous Lines of Fourth Circuit Precedent...................................2

II.   The Line of Authority Cited by Appellees Pertains Solely to
      Orders Having the Effect of Denying an Injunction, and Thus
      Provides No Support for Their Proposed Rule..................................8

III.  Appellees' Proposed Jurisdictional Limitation Cannot Be
      Justified by Generalized Concerns Regarding "Piecemeal
      Appeals," and Would Permit Urgent, Irreparable Harms Such as
      Those in This Case to Go Unaddressed........................................13

CONCLUSION ...................................................................................19

INDEX OF EXHIBITS

CERTIFICATE OF SERVICE

Appellees, in their Motion to Dismiss Appeal for Lack of Jurisdiction (4th Cir. D.E. 44-1) (hereinafter, "Mot."), concede that the district court's August 26, 2016 opinion and order "denied a . . . preliminary injunction on [Plaintiffs'] equal protection claim." Mot. at 1. Appellees do not—and cannot—contest that: (1) Congress has explicitly granted this Court jurisdiction to hear interlocutory appeals from district court orders "granting, continuing, modifying, refusing or dissolving injunctions," 28 U.S.C. § 1292(a)(1) ("section 1292(a)(1)"), or that (2) Plaintiffs timely appealed the district court's denial of injunctive relief to this Court. Instead, Appellees suggest that, because certain injunctive relief remains pending before the district court, this Court lacks jurisdiction to entertain what Appellees refer to as a "piecemeal appeal[]." Mot. at 4.

The holding for which Appellees advocate would create an unprecedented and unwarranted limitation on this Court's express statutory jurisdiction to hear interlocutory appeals from district orders denying motions for injunctive relief. This proposed new rule finds no support in the text of section 1292(a)(1), in the extensive Fourth Circuit case law interpreting that provision, or in common sense. Indeed, this Court and others have explicitly *rejected* attempts to narrow the jurisdiction to hear interlocutory appeals under section 1292(a)(1) by incorporating a "finality" requirement such as the one urged by Appellees. To the contrary, this

Court has recognized section 1292(a)(1)'s grant of jurisdiction as a "statutory mandate" to hear interlocutory appeals falling within that section.

The undue limits on this Court's jurisdiction advocated by Appellees would effectively foreclose appeals in cases—such as this one—in which this Court's intervention is necessary to prevent ongoing and irreparable harm. Every day until Part I of North Carolina's House Bill 2 ("H.B.2.") is enjoined, thousands of transgender North Carolinians like Plaintiffs are required to live, work, and learn under its discriminatory mandate. They are confronted on a daily basis not only with the stigma of the second-class status the State has imposed upon them, but also the very urgent and practical dilemma created by H.B.2—that, in most government facilities, they no longer have a safe place to use the restroom.

This Court should reject Appellees' motion and recognize its jurisdiction to entertain Plaintiffs' appeal.

## ARGUMENT

## I.  The Unprecedented Jurisdictional Limitation that Appellees Seek Conflicts with the Text of Section 1292(a)(1) and Numerous Lines of Fourth Circuit Precedent.

Appellees propose that this Court read into section 1292(a)(1) an unprecedented jurisdictional limitation—akin to the final judgment rule— forbidding what they deem to be "piecemeal appeals." Mot. at 4. Although Appellees do not define the contours of this limitation beyond the instant case, they

suggest that Plaintiffs are unable to seek appellate review because certain injunctive relief remains pending before the district court. Simply put, Appellees' argument is not only foreclosed on multiple grounds, but also entirely alien to the jurisprudence interpreting and applying section 1292(a)(1).

As an initial matter, Appellees' proposed jurisdictional limitation conflicts with the unambiguous Congressional grant of jurisdiction in section 1292(a)(1). The text of that provision could not be clearer that this Court "shall have" jurisdiction to hear appeals from "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, *refusing* or dissolving injunctions." 28 U.S.C. § 1292(a)(1) (emphasis added). Congress did not limit the grant of jurisdiction to exclude situations where a separate request for a preliminary injunction, based on a different legal ground, remained under consideration in the district court. To the contrary, this Court has interpreted section 1292(a)(1) as creating a bright-line rule permitting interlocutory appeals of orders denying preliminary injunctive relief: "[I]t is clear that an order denying a preliminary injunction is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1)." *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 641 n.5 (4th Cir. 1975); *see also Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) ("The decision on a preliminary injunction motion is an appealable order. *See* 28 U.S.C. 1292(a)(1)."). Appellees' proposed

jurisdictional limitation thus conflicts with both the text of section 1292(a)(1) and this Court's interpretation of that statute.

Indeed, this Court has suggested that it could not craft exceptions to 1292(a)(1)'s grant of jurisdiction even if there were a persuasive reason to do so. In *NationsBank Corp. v. Herman*, this Court described its jurisdiction to hear appeals of preliminary injunctions under section 1292(a)(1) as not merely a question of discretion, but as a "*statutory mandate* to hear [a party's] interlocutory appeal of the preliminary injunction." 174 F.3d 424, 427 (4th Cir. 1999) (emphasis added) (contrasting the Court's discretion to address additional questions intertwined with injunctive relief). In other words, this Court cannot—as Appellees advocate—simply decline to exercise jurisdiction when a party has timely and properly filed an appeal from a decision denying a preliminary injunction. Rather, its "statutory mandate" is to hear appeals, such as this one, that fall within the scope of Congress's jurisdictional grant. *Id.*

Indeed, in at least two instances within the last ten years, this Court has in fact exercised jurisdiction to hear what Appellees characterize as "piecemeal appeals." In *Everett v. Pitt County Board of Education*, this Court addressed an appeal by parents whose motion to enjoin a school board from implementing a particular school assignment plan had been denied. 678 F.3d 281, 287-88 (4th Cir. 2012). The school board challenged this Court's jurisdiction, contending that the

district court's order was not final, because the district court had indicated its intent to reconsider certain merits issues underlying the denial of injunctive relief: "[T]he School Board argues that the district court's denial of Appellants' motion is not a 'final order' pursuant to 28 U.S.C. § 1291 because the district court 'has expressed its clear intention to take up the issue of unitary status after the submission of the parties' reports no later than 31 December 2012.'" *Id.* at 288. Citing the plain text of section 1292(a)(1), this Court explicitly refused to hold that its jurisdiction could be circumscribed by rules of finality: "[W]e reject the School Board's jurisdiction argument [because] 28 U.S.C. § 1292(a)(1) provides this Court with jurisdiction over district court decisions 'granting, continuing, modifying, refusing or dissolving injunctions.'" *Id.* This Court accordingly addressed the district court's order on the merits.

Similarly, in *Norfolk Dredging Co. v. Wiley*, this Court addressed a district court's order dissolving in part an injunction it had issued, in which it had (1) enjoined all suits against a dredging operator in other courts or venues, and (2) accepted as a limit on the dredging operator's liability the value of the tugboat that was involved in the accident. 439 F.3d 205, 207 (4th Cir. 2006). In its dissolution order, the district court modified its prior injunction to permit additional suits against the dredging operator, but specifically left unresolved the key question of the operator's liability beyond the asserted value of the tugboat

5

under the so-called "flotilla doctrine," holding that it would "reconsider the flotilla doctrine argument if [plaintiff's] judgment were to exceed $80,000 and [he] again filed the motion to increase the fund." *Id.* at 208. Addressing the district court's modification on appeal, this Court was not deterred by the lack of finality in the district court's ruling, and instead—merely citing section 1292(a)(1)—accepted jurisdiction to hear the dredging operator's appeal from the order partially dissolving the prior injunction. *Id.*

This Court's assumption of jurisdiction in cases such as *Everett* and *Norfolk Dredging*—in which significant issues as to injunctive relief remained unresolved in the district court—is flatly inconsistent with the notion that section 1292(a)(1) somehow incorporates considerations of finality. And in fact, this Court's assumption of jurisdiction in such cases is consistent with a uniform line of cases from other circuits unambiguously articulating that section 1292(a)(1) "has no requirement pertaining to finality of judgment," and thus that the existence of unresolved issues simply has no relevance to an appellate court's ability to entertain an interlocutory appeal. *Am. Cyanamid Co. v. Lincoln Labs., Inc.*, 403 F.2d 486, 488 (7th Cir. 1968); *see also, e.g.*, *Schulner v. Jack Eckerd Corp.*, 706 F.2d 1113, 1114 (11th Cir. 1983) ("[i]t is well-established that the granting of an injunction is appealable as an interlocutory order even though the trial court may have reserved its determination of remaining issues"); *SquirtCo v. Seven-Up Co.*,

628 F.2d 1086, 1090 (8th Cir. 1980) ("Notwithstanding reservation of the damages issue for later determination, this court had jurisdiction under 28 U.S.C. § 1292(a)(1) to review the grant of the injunction and all matters related to it."); *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560, 1562 (Fed. Cir. 1987) ("Courts have interpreted § 1292(a) as conferring jurisdiction on courts of appeals when a trial court has issued an order involving any injunctive relief regardless of whether all other issues have been finally adjudicated.").  The sheer volume of judicial language from this and other circuits that would be upended if Appellees' proposed rule were to be adopted should be seen as a measure of how unprecedented and unwarranted their position is.

And tellingly, this Court and others have already explicitly rejected a necessary consequence of the finality requirement that Appellees advocate for: that if a district court denied injunctive relief as to fewer than all parties or on fewer than all claims, aggrieved parties would be required to obtain a certification under 28 U.S.C. § 1292(b) or a partial judgment under Federal Rule of Civil Procedure 54(b) to pursue an appeal.  In *Allstate Insurance Co. v. McNeill*, this Court held that there was simply no room for section 1292(b) certifications in appeals of injunctions, holding that section 1292(a)(1) is "self-executing without need of permission under 1292(b)."  382 F.2d 84, 87-88 (4th Cir. 1967).  Every other circuit to address the issue likewise has held that partial judgment under Federal

7

Rule of Civil Procedure 54(b) cannot be required in order to take an interlocutory appeal under section 1292(a)(1), even when an injunction is not adjudicated as to all claims or parties.[1]  That this Court and others have been unable to foresee any intersection between section 1292(a)(1) and either section 1292(b) or Rule 54(b) demonstrates how foreign the rule advocated for by Appellees is to the current structure of interlocutory appeals.

## II.   The Line of Authority Cited by Appellees Pertains Solely to Orders Having the *Effect* of Denying an Injunction, and Thus Provides No Support for Their Proposed Rule.

The line of Seventh Circuit authority upon which Appellees rely (Mot. at 5-6) provides no support for the jurisdictional limitation that they advocate.  Indeed, not one of the authorities cited by Appellees is one in which an appellate court was reviewing a decision denying an actual motion for preliminary injunctive relief. Instead, what was at issue in these cases was an order dismissing an underlying claim or count in the complaint (or recognizing that a plaintiff had failed even to

---

[1] *See Gray Line Motor Tours, Inc. v. City of New Orleans*, 498 F.2d 293, 295 n.1 (5th Cir. 1974) (noting that, under section 1292(a)(1), "an appeal may be perfected . . . even when the action involves local claims or multiple parties," because injunctive orders are "considered to be outside the scope of Rule 54(b)"); *Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc.*, 484 F.2d 1037, 1038 (3d Cir. 1973) ("[Rule] 54(b) does not affect the appealability of orders 'granting . . . injunctions.'"); *Atl. Richfield Co. v. Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO*, 447 F.2d 945, 947-48 (7th Cir. 1971) (citing cases from additional circuits, holding that "a 54(b) certificate is not required when an appeal may be prosecuted as a matter of right pursuant to 28 U.S.C. § 1292(a)").

plead such a count in the complaint), which therefore arguably had the *effect* of denying such injunctive relief.

In *Albert v. Trans Union Corp.*, for example, defendants moved to "dismiss certain counts" of the complaint for which plaintiffs sought injunctive relief, and the district court granted *that* motion, holding that "private plaintiffs are not entitled to injunctive relief under the [Fair Credit Reporting Act]" because "Congress intended to provide injunctive relief only to the FTC." 346 F.3d 734, 736 (7th Cir. 2003). Plaintiffs sought "immediate review of the dismissal." *Id.* Similarly, in *Onyango v. Downtown Entertainment LLC*, an unpublished disposition, the district court entered an order striking from the complaint a count for injunctive relief, on the ground that plaintiff "did not plead facts sufficient for the Court to conclude that there is a substantial likelihood that future violations will occur." 525 F. App'x 458, 460 (7th Cir. 2013). The Seventh Circuit noted specifically that plaintiff "did not file a timely appeal of the denial of his motion for a *preliminary* injunction" and that only the separate dismissal of the claim was at issue. *Id.* Finally, in *Cherry v. Berge*, another unpublished disposition, the plaintiff had moved for a preliminary injunction—but he did so on a retaliation claim that he "had not presented . . . in his complaint" and that the district judge, as a rule, required to be presented in a separate lawsuit from the other claims at issue. 98 F. App'x 513, 515 (7th Cir. 2004). The district court "did not reach the merits

of [the] motion" but rather dismissed it with leave to refile the claim in a separate action.  *Id.*  Thus, the issue before the Seventh Circuit was the denial of what it deemed "a request to amend [plaintiff's] complaint to add a new claim."  *Id.* at 516.[2]

The treatise that Appellees cite also recognizes the fundamental distinction between orders addressing an actual request for injunctive relief and those that have the *effect* of doing so.  As that treatise explains, "The language of § 1292(a)(1) should be read at face value when an order expressly refuses an explicit request for a preliminary injunction."  16 Wright & Miller, *Fed. Prac. and Proc.* § 3924.1.  Such appeals are contrasted, however, with "appeals . . . attempted from a wide variety of interlocutory orders on the ground that they have effectively refused a permanent injunction," and specifically those cases dealing with "appeal[s] from interlocutory orders that strike claims for injunctive relief."  *Id*.  Although Appellees fail to acknowledge as much, it is only this latter discussion that they quote—and that discusses the Seventh Circuit line of authority they cite.

---

[2] In *Cherry*, the decision as to injunctive relief also was effectively moot, since plaintiff had—between the original filing of his interlocutory appeal and its adjudication—filed a separate suit enumerating the same retaliation claim, moved anew for identical injunctive relief in the district court, and already unsuccessfully appealed the denial of that injunctive relief to the Seventh Circuit.  *Id.* at 515-16 (citing *Cherry v. Frank*, 83 F. App'x 135 (7th Cir. 2003)).

In the scenario in which an order does not actually adjudicate a motion for injunctive relief—but rather adjudicates some motion that might have *the effect of* foreclosing injunctive relief—courts have been more circumspect in permitting interlocutory appeals.  A different standard may be justified in such cases, because: (1) such appeals are not specifically enumerated in section 1292(a)(1)'s jurisdictional grant; (2) the number and variety of orders that arguably *have the effect* of adjudicating injunctive relief is far greater than with orders that actually adjudicate motions for injunctive relief; and (3) in certain circumstances, hearing interlocutory appeals of orders that have the *effect* of somehow foreclosing injunctive relief might be in derogation of a separate Congressional mandate—namely, the final judgment rule.[3]  Thus, when the Supreme Court extended jurisdiction under section 1292(a)(1) to orders that do not by their terms refuse an injunction but "ha[ve] the practical effect of doing so," it limited that extension to only those orders that have a "serious, perhaps irreparable, consequence."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 86 (1981).

But courts—including this Court—have explicitly rejected attempts to apply heightened requirements in interlocutory appeals from orders that adjudicate an

---

[3] This third point is particularly salient when—as in *Albert* and *Onyango*—the court has done no more than dismiss a claim for relief sought in a complaint when a plaintiff had not otherwise pressed for such relief.  In such cases, an interlocutory appeal would more obviously flout the normal rules governing the dismissal of one claim, count, or party from an action.

actual motion for injunctive relief.  In *NationsBank*, the plaintiff urged, based on

*Carson*, that "a court of appeals should only exercise jurisdiction under section

1292(a)(1) when the injunction is 'of serious, perhaps irreparable, consequence.'"

174 F.3d at 427 n.1.  This Court rejected such additional requirements not rooted in

the statutory text:

> [I]n *Carson*, the Court set forth the standard governing appeals of
> interlocutory orders that have effects similar to those of injunctions, but that
> technically are not injunctions.  **When, instead, a trial court enters an
> actual injunction, as in this case, *Carson* is inapplicable, and section
> 1292(a)(1) applies directly.**

*Id.* (internal citation omitted; emphasis added).  The Seventh Circuit itself has also

refused to apply the heightened *Carson* requirement to orders falling within the

explicit text of section 1292(a)(1).  *See Holmes v. Fisher*, 854 F.2d 229, 231-32

(7th Cir. 1988) ("Section 1292(a)(1) is decently plain: all interlocutory orders

denying injunctions are appealable. . . .  Asking whether an order plainly denying

an injunction also caused irreparable injury would add a gratuitously complicating

factor to the simple statutory rule."); *see also* 16 Wright & Miller § 3924.1, at n.3

(collecting cases from other circuits).

   In short, although compelling reasons may exist to limit jurisdiction when—

as in the Seventh Circuit cases cited by Appellees—a court strikes a claim in a

complaint that includes a prayer for injunctive relief, these cases provide no

rationale for narrowing this Court's exercise of the explicit statutory jurisdiction

granted to it in section 1292(a)(1) in cases such as this one in which the district court actually ruled upon a motion for preliminary injunction.

### III. Appellees' Proposed Jurisdictional Limitation Cannot Be Justified by Generalized Concerns Regarding "Piecemeal Appeals," and Would Permit Urgent, Irreparable Harms Such as Those in This Case to Go Unaddressed.

Unable to support their proposed jurisdictional limitation with actual precedent, Appellees fall back on a general policy disfavoring "piecemeal appeals." Mot. at 1. Whatever this Court's general opinion toward "piecemeal appeals," however, Appellees are unable to point to even one case in which this Court has applied this rationale to narrow its exercise of the jurisdiction conferred in section 1292(a)(1). The case that they cite for this proposition, *Cassidy v. Virginia Carolina Veneer Corp.*, in fact recognizes that interlocutory appeals should properly be entertained when section 1292 permits. 652 F.2d 380, 383 (4th Cir. 1981).[4] And indeed, such a narrowing of jurisdiction would be impossible to

---

[4] In *Cassidy*, defendants appealed a district court order that granted a permanent injunction against them and that also stated that it would award attorneys' fees— though it postponed the actual enumeration of the fees. *Id.* at 382. This Court specifically noted that, as long as injunctive relief (the "substantive issue") was pressed on appeal, it properly had jurisdiction to hear the appeal. *Id.* at 383. However, defendants had "abandoned the [preliminary injunction] issue on the merits," and thus this Court held that, when all that remained in the appeal was an order awarding attorneys' fees in principle, the appeal lacked finality. *Id.* Thus, nothing in *Cassidy* supports Appellees' proposed jurisdictional limitation; if anything, the Court's original willingness to entertain the appeal while issues remained unresolved before the district court cuts against Appellees' proposed rule.

13

reconcile with this Court's recognition, in *NationsBank*, that section 1292(a)(1) imposes a "statutory mandate" to hear interlocutory appears of preliminary injunctions, 174 F.3d at 427, and its bright-line rule that "an order denying a preliminary injunction is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1)," *Doe*, 529 F.2d at 641 n.5.

Indeed, Appellees' suggestion that this Court should discourage "piecemeal appeals" ignores the fact that section 1292(a)(1) expressly permits serial appeals from orders merely "modifying" or "dissolving" (or refusing to modify or dissolve) injunctions. *See, e.g.*, *Norfolk Dredging*, 439 F.3d at 208 (adjudicating an appeal from partial dissolution of preliminary injunction); *United States ex rel. Rahman v. Oncology Associates*, 198 F.3d 489, 494 (4th Cir. 1999) (adjudicating an appeal from "the district court's order denying the motion to dissolve the injunction"); *see also* 16 Wright & Miller § 3924.1 (noting the possibility of serial appeals from repeated district court denials of motions for injunctions). Even when this Court has noted the potential for serial litigation caused by interlocutory appeals from preliminary injunctions, it has not suggested that the proper cure is to curb its jurisdiction to hear such appeals: instead, taking such *seriatim* jurisdiction as a given, this Court has suggested that the proper response is to strictly enforce the substantive requirements for granting injunctive relief. *See Hughes Network Sys.*,

17 F.3d at 694 (noting that, to account for such concerns, "courts have insisted that the harm necessary to justify issuance of a preliminary injunction be irreparable.").

From a purely logistical perspective, it is telling that Appellees' articulation of their proposed jurisdictional rule is short on details regarding its scope and implementation. For example, Appellees seem to suggest (though do not actually state) that such a jurisdictional limitation would apply only to the denial of injunctive relief, and not its grant. Mot. at 4. Yet section 1292(a)(1) has never before been asymmetrically construed as applying to orders granting injunctions in a different manner than those denying them. And Appellees do not state whether such a similar rule would apply to orders dissolving or modifying (or failing to dissolve or modify) injunctions. Nor, even as applied to orders denying injunctions, do Appellees ultimately provide a clear principle as to when this Court should find an appeal is sufficiently final so as to permit interlocutory review. If an injunction is denied as to one party but not another, does that detract from its finality? Appellees simply do not say. Ultimately, Appellees ask this Court to replace a clear, bright-line rule with a set of difficult finality considerations that even they cannot resolve—ignoring that, with respect to jurisdictional issues in particular, clarity is of singular importance. *See Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 202 (1988) (noting that, with regard to rules of appellate jurisdiction, "[c]ourts and litigants are best served by [a] bright-line rule").

15

Appellees also ignore the fact that their proposed rule will have tremendous practical consequences in foreclosing the ability of parties to seek the intervention of appellate courts to prevent serious and irreparable harms—or, worse, inviting gamesmanship by parties or district judges to forestall appellate review. Appellees' proposed jurisdictional limitation would grant district courts the ability to deny an injunction on one ground while simultaneously forestalling appellate review of its decision by declining to adjudicate another ground for relief that, if recognized, would afford the same injunctive relief. The reason for delaying the alternative claim may be benign—in this case, for example, the Court requested additional briefing. However, under the rule Appellees seek, a party could strategically delay the adjudication of *all* grounds for injunctive relief by, for example, seeking extensive discovery as to one claim or raising procedural barriers to the adjudication of one issue. The result is that urgent and irreparable harms will be perpetuated without any recourse to appellate review—or, worse, that plaintiffs may be forced to abandon otherwise meritorious claims so as to more quickly seek appeal.

Here, Appellees seek to use the sequence of events in the district court to cast blame on Plaintiffs-Appellants themselves. But that is meritless. When the district court deferred deciding whether a preliminary injunction based on Plaintiffs-Appellants' due process claims was warranted, it offered the opportunity

for additional briefing and even posed specific supplemental questions.  Mot.
Exh. A at 82 (JA992).  It also indicated that any further oral argument on those
claims would occur *at the time of trial*.  Mot. Exh. A at 82-83 (JA992-93).  Under
these circumstances, Plaintiffs-Appellants had every reason to provide the
additional briefing requested by the court.  They did so secure in the knowledge
that they had already filed a valid appeal of the denial of preliminary relief based
on equal protection.  It is absurd to suggest these actions somehow retroactively
deprived this Court of the jurisdiction it had the day the appeal was filed.

Finally, it is important to understand what is at stake here.  Plaintiffs-
Appellants seek only a return to the status quo before H.B.2's enactment.  As the
district court found, transgender individuals like Plaintiffs had been using sex-
separated facilities matching their gender identity long before H.B.2, "without
complaint," "without causing any known infringement on the privacy rights of
others," and "without posing a safety threat to anyone."  Mot Exh. A at 45, 76-77
(JA955, JA986-87).  Indeed, counsel for Governor McCrory conceded that he was
"certain" that transgender people had likely used restrooms matching their gender
identity before H.B.2, and he was "not aware of any problem with that."  Exh. 1
at 4 (JA832).

But now that H.B.2 has changed the *status quo ante*, the harm to Plaintiffs
from being denied access to restrooms and other facilities is acute.  The

17

preliminary injunction granted by the district court under Title IX was limited to the facilities of the University of North Carolina and the three individual transgender Plaintiffs. Mot. Exh. A at 81-82 (JA991-92). Thus, absent intervention from this Court, when Plaintiff Joaquín Carcaño visits state government offices as part of his normal job duties, he will have no place to safely use the restroom. Exh. 2 at 5 (JA129). Nor will he have a safe place to use the restroom at the highway rest areas he previously used when driving to Atlanta to visit his brother. Exh. 2 at 6 (JA130). As the district court recognized, a failure to enjoin the law would "cause substantial hardship to the individual transgender Plaintiffs, disrupting their lives." Mot Exh. A at 74 (JA984). The same is no less true with regard to the thousands of other transgender North Carolinians who are prejudiced by H.B.2, including the many transgender members of the ACLU of North Carolina whose rights are being enforced here by that associational plaintiff.

\* \* \*

This Court should reject Appellees' radical and unwarranted jurisdictional limitation. For the much same reasons, the Court should also reject Appellees' alternative request that this proceeding be held in abeyance. As the discussion above illustrates, this Court and others have regularly proceeded with interlocutory appeals of preliminary injunctions while district court proceedings continued. *See, e.g.*, *Everett*, 678 F.3d at 288 (proceeding with appeal and dismissing as irrelevant

the potential that the district court might issue further rulings). Indeed, Appellees cannot credibly argue for such relief given their argument below that the district court should stay proceedings on the ground that *this appeal* would "provide guidance" to that court. Exh. 3 at 4 (Dist. Ct. D.E. 143 at 29); *see also* Exh. 3 at 8-9, (Dist. Ct. D.E. 143 at 36-37) (arguing for a stay below in part because Appellees would be "seeking guidance from the Fourth Circuit").

## CONCLUSION

For the foregoing reasons, Plaintiffs ask that this Court heed section 1292(a)(1)'s "statutory mandate" and entertain this appeal without delay.

Dated: October 31, 2016

/s/ Jon W. Davidson
Jon W. Davidson
Peter C. Renn
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
4221 Wilshire Blvd., Ste. 280
Los Angeles, CA 90010
Phone: (213) 382-7600
jdavidson@lambdalegal.org
prenn@lambdalegal.org

Tara L. Borelli
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
730 Peachtree Street NE, Suite 640
Atlanta, GA 30308-1210
Phone: (404) 897-1880
tborelli@lambdalegal.org

Kyle A. Palazzolo
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
105 W. Adams, 26th Floor
Chicago, IL 60603-6208
Phone: (312) 663-4413
kpalazzolo@lambdalegal.org

Paul M. Smith
Scott B. Wilkens
Nicholas W. Tarasen
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001-4412
Phone: (202) 639-6000
psmith@jenner.com
swilkens@jenner.com
ntarasen@jenner.com

James D. Esseks
Leslie Cooper
Chase B. Strangio
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
jesseks@aclu.org
lcooper@aclu.org
cstrangio@aclu.org

Elizabeth O. Gill
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Phone: (415) 343-0770
egill@aclunc.org

Christopher A. Brook
AMERICAN CIVIL LIBERTIES UNION OF
    NORTH CAROLINA LEGAL
    FOUNDATION
Post Office Box 28004
Raleigh, NC 27611
Phone: (919) 834-3466
cbrook@acluofnc.org

*Counsel for Plaintiffs-Appellants*

20

# INDEX OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| Exhibit 1 | Excerpt from Transcript of Preliminary Injunction Hearing before District Judge Schroeder (Aug. 1, 2016) (JA767-68, JA831-33) |
| Exhibit 2 | Declaration of Joaquín Carcaño in Support of Plaintiffs' Motion for Preliminary Injunction (JA125-30) |
| Exhibit 3 | Excerpt from Transcript of Status Conference before Magistrate Judge Peake (Sept. 2, 2016) (Dist. Ct. D.E. 143 at 1-2, 28-30, 35-38) |

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2016, the foregoing PLAINTIFFS-

APPELLANTS' OPPOSITION TO MOTION TO DISMISS APPEAL, including

all exhibits thereto, was served on all parties or their counsel of record through the

CM/ECF system.

/s/ Jon W. Davidson
Jon W. Davidson
